STEPHEN A. LANEN *vs.* HAVERHILL, GEORGETOWN AND DANVERS STREET RAILWAY COMPANY.

SAME *vs.* BOSTON AND NORTHERN STREET RAILWAY COMPANY.

Essex.    November 5, 1908. — January 4, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence.    Street Railway.*

A motorman operating a car on a track over which he passes many times every day, who, in violation of a rule of the corporation by which he is employed, fails to lessen the speed of his car when approaching at the entrance of a bridge a sunken joint in the tracks depressed about two inches, of which he has known for at least a month, knowing also that such a joint may send the car off the track and against the bridge, if he is injured in consequence of the car leaving the track and running against a post of the bridge, cannot recover from his employer for his injuries, as there is no evidence that he was in the exercise of reasonable care.

TWO ACTIONS OF TORT, by a motorman injured, while in the employ of the defendant in the first case, by reason of the car which he was operating leaving a track, owned and maintained by the defendant in the second case, and crashing into a post forming a part of the bridge between the main part of Haverhill and that part of Haverhill called Bradford, owing to an alleged defect in the track. Writs dated October 12, 1903.

In the Superior Court the cases were tried together before *Sherman*, J., who at the close of the plaintiff's evidence ruled that the plaintiff was not entitled to recover, and ordered the jury to return a verdict for the defendant in each of the cases. The plaintiff excepted, and by agreement of the parties the judge reported the cases for determination by this court. If the ruling and direction of the judge were right, judgments were to be entered on the verdicts. If the ruling and direction of the judge were wrong in either case or in both cases, the verdict was to be set aside in either or both cases, as justice might require, and the case or cases were to stand for a new trial.

*H. H. Cole*, for the plaintiff.

*J. P. Sweeney*, for the defendants.

KNOWLTON, C. J.   The plaintiff was a motorman running a car, owned by the defendant in the first case, over a track owned and to be kept in repair by the defendant in the second case. The car which he was running left the track just before it reached a bridge, covered with plank, over the Boston and Maine Railroad in Bradford in the city of Haverhill, which is immediately southerly of the bridge over the Merrimac River between Bradford and the main part of Haverhill. The planking on the bridge over the Boston and Maine tracks was thirty feet long. The space between that planking and the bridge over the Merrimac River was covered with stone paving, and its length was about twenty feet. The rails in the stone pavement of the street southerly of the railroad bridge were the ordinary girder rails, and those through the planking of the bridge were T rails. The junction of the easterly T rail with the girder rail was about five feet southerly of the planking of the bridge over the railroad, and the junction of the westerly T rail with the girder rail was about twenty feet southerly of the planking. At the joint of

these easterly rails a small piece was broken off from the flange at the base of the girder rail on the inner side, but, as this was not what kept the wheels on the track, there is nothing to show that it was a cause of the accident. At the junction of these two rails of different kinds there was a loose or low joint which is supposed to have been the cause of the cars leaving the track, but there was testimony that there was more than one such joint within a short distance, and it was not certain upon the evidence which of the joints caused the accident. The evidence tended to show that it was one of the two above mentioned.

The plaintiff testified that he had been a motorman running cars for the first defendant over this track all the time but about four months for between five and six years; that he passed over these tracks many times every day; that he had often noticed the joints between these two kinds of rails at that point, and that he noticed that there was a low joint in the block paving over the abutment; at one time he said it was what might be called a sunken joint, very slightly sunken, "not more than an inch — less than an inch"; afterward he said it might be two inches; he added, "Well, I should say it was two inches, any-way." He said he had seen this sunken joint at least a month before the accident, but had made no report of it to anybody; that he knew it was the duty of the motorman to pass over such joints slowly and with care, for the reason that there is always danger of going off the rail; that he knew before the accident that a sunken joint of two inches might send a car off the track; that he could not remember anything that happened that day after he left the turnout, before the accident, and that he did not know at what rate of speed he was going just before, nor at what rate he was going when the car left the track. The turn-out was about four hundred and fifty feet southerly of the bridge. The grade of the street running southerly from the Haverhill bridge fell about five and one tenth feet in one hundred and sixty-one feet, and then began to rise until, at the turnout, it was nearly level with the bridge. There was other testimony tending to show the danger of running rapidly over such a sunken joint. He also testified that there was a rule of the road that a motorman should "slow up" after leaving the turn-out, and go on the Haverhill bridge at a low rate of speed. Sev-

eral witnesses testified as to the rate at which the car was going at the time of the accident, and no one said that it was "slowed up" after leaving the turnout, but all agreed that it was going at the usual rate.

Upon the uncontradicted testimony we are of opinion that there was no evidence that the plaintiff was in the exercise of due care. He was not only running in violation of the rule of the road in failing to "slow up" at this point as he was about to pass over the bridge, but he was doing this when he had known for more than a month, from his experience in passing over this place, that there was a sunken joint at that point, which was liable to cause a car to leave the track and run against the bridge, as this car did. The jury would not have been warranted in finding that the plaintiff, with such knowledge as he had, was in the exercise of reasonable care when, in violation of the defendant's rule, he ran his car at its usual rate of speed over this sunken joint, in close proximity to the bridge.

*Judgment on the verdicts.*